FILED

2007 Oct-31  PM 02:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **PAMELA MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 06-S-1216-NW** |
| | ) | |
| **JIMMY DEAN / SARA LEE** | ) | |
| **FOODS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Believing she was discriminated against, and ultimately discharged, on the basis of her race, Pamela Moore filed this lawsuit against Sara Lee Foods, Inc., on June 21, 2006.[1]  After engaging in discovery, defendant moved for summary judgment on April 5, 2007.[2]  Recognizing plaintiff's status as a *pro se* litigant, this court entered a detailed submission order reminding plaintiff of her obligation to respond to the motion,[3] but plaintiff's eventual responses were wholly noncompliant — both with the submission order and with the portion of the Uniform Initial Order that governs summary judgment briefing.[4]

---

[1] Doc. no. 1 (Order on *Pro Se* Application).  *See also* doc. no. 11 (Amended Complaint).

[2] Doc. no. 18 (Defendant's Motion for Summary Judgment).

[3] Doc. no. 21 (Submission Order).

[4] Doc. no. 22 (Plaintiff's Response in Opposition to Summary Judgment); doc. no. 26 (Plaintiff's Supplemental Response in Opposition to Summary Judgment).  Appendix II to the

Accordingly, the court entered orders striking plaintiff's responses and holding that she had admitted all of defendant's allegedly undisputed facts.[5] *Cf. Digioia v. H. Koch & Sons*, 944 F.2d 809, 811 n.6 (11th Cir. 1991) (same situation under a local rule); *Brandon v. Lockheed Martin Aeronautical Systems*, 393 F. Supp. 2d 1341, 1347 (N.D. Ga. 2005) (same). *See also Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) ("[W]e hold that a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."), *cert. denied*, 500 U.S. 933 (1991); *Brown v. United States Patent & Trademark Office*, No. 06-14716, 2007 WL 446601, at * 1 (11th Cir. Feb. 13, 2007) ("Although *pro se* pleadings are to be liberally construed . . . , ordinary rules of procedure and summary judgment apply.").

As the court recognized previously, however, a nonmovant's failure to controvert a statement of undisputed fact cannot "absolve the district court of even checking whether the citation [of record evidence] supports the assertion," because "[s]uch an approach would derogate the truth-finding functions of the judicial process by substituting convenience for facts." *Giannullo v. City of New York*, 322 F.3d 139,

---

Uniform Initial Order states, in part, that "[*a*]*ll material facts set forth in the statement required of the moving party will be deemed admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment*." Doc. no. 15 (Uniform Initial Order), Appx. II, 2(a) (emphasis in original).  Plaintiff's response

[5] Doc. no. 25 (Order Striking Response); Order Dated July 11, 2007.

143 n.5 (2d Cir. 2003).  For that reason, the court has thoroughly reviewed the record and defendant's brief, and now concludes that defendant's motion for summary judgment is due to be granted, for at least two reasons.  First, to the extent plaintiff intended to sue her employer, she has named the wrong entity as defendant.  Second, even if plaintiff intentionally sued an entity other than her employer, her claims fail on the merits.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "*shall be* rendered *forthwith* if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis supplied). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment always bears the initial responsibility of informing the court, by reference to materials on file, that there are no genuine

issues of material fact to be decided at trial.  *Id*. at 323; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case.  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*).  When the moving party has discharged its burden, the non-moving party cannot rest upon the pleadings; rather, Rule 56(e) requires the party opposing summary judgment to go beyond the pleadings, and to demonstrate by affidavit or other appropriate means that there is a genuine issue of material fact for trial.[6]  *See also Celotex*, 477 U.S. at 324; *Jeffery*, 64 F.3d at 593-94.

That said, summary judgment may not be granted by default.  *Trustees of Central Pension Fund of International Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc.*, 374 F.3d 1035, 1040 (11th Cir. 2004).  Thus, in reviewing the record, "the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment."

---

[6] Federal Rule of Civil Procedure 56(e) provides, in pertinent part, that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of

the non-moving party are not unqualified, however.  "[A]n inference is not reasonable

if it is only a guess or a possibility, for such an inference is not based on the evidence,

but is pure conjecture and speculation."  *Daniels v. Twin Oaks Nursing Home*, 692

F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary
> judgment unless that factual dispute is material to an issue affecting the
> outcome of the case.  The relevant rules of substantive law dictate the
> materiality of a disputed fact.  A genuine issue of material fact does not
> exist unless there is sufficient evidence favoring the nonmoving party
> for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921).  *See also Anderson v.*

*Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law").

## II. SUMMARY OF RELEVANT FACTS

Defendant, Sara Lee Foods, Inc., operates a Jimmy Dean meat processing plant

and company store in Florence, Alabama.[7]  Plaintiff, who is African American,

worked as a cashier at the company store from July 2001 to January 2004, though she

---

[7] Doc. no. 19 (Defendant's Brief in Support of Summary Judgment), Statement of Undisputed
Facts, ¶¶ 1-2.

readily admits that she understood her actual employer was a temporary employment agency known as "Kelly Services."[8]  In addition to her own admissions, the evidence on file strongly suggests that Kelly Services controlled the terms and conditions of plaintiff's employment while she was assigned to the company store operated by defendant.[9]  Plaintiff was, for instance, paid by Kelly Services; her benefits were conferred by Kelly Services; her application for employment was submitted to Kelly Services; her on-site supervisors at the company store — the only individuals with the power to discipline plaintiff — were Kelly Services employees; and plaintiff knew that Kelly Services could decide at any given time to end her assignment at defendant's company store and move her to another location.[10]

Despite this, plaintiff did not file suit against Kelly Services.  Instead, she sued Sara Lee Foods, Inc.  Her chief complaint is the way that a Sara Lee employee, Connie Mason-Bevis, treated her while she worked at the company store.[11]  Bevis, who is Caucasian, began working at the company store as a supervisor in September 2003.[12]  Plaintiff alleges a slew of arguably trivial slights by Bevis, such as refusing

---

[8] *Id.* at ¶¶ 3, 9.  *See also* Deposition of Pamela Moore ("Moore Depo."), p. 68, line 22 - p. 69, line 22; p. 71, lines 4-23.

[9] *See*, *e.g.*, doc. no. 19, Statement of Undisputed Facts, ¶ 3.

[10] *Id.* at ¶¶ 3, 8, 9.

[11] *See*, *e.g.*, Moore Depo., p. 74, lines 12-17.

[12] Doc. no. 19, Statement of Undisputed Facts, ¶ 11.  *See also* Moore Depo., p. 85, lines 19-23; *id.* at p. 183, lines 5-8.

to allow her to bring food into the store or shop during her shift, questioning her about the presence of flyers or advertisements in the store, and frowning at her when she greeted African American customers — none of which seriously altered the terms and conditions of her employment.[13]  (She also alleges she was given unfavorable assignments, such as reloading shelves, rotating meat in the freezers, and unloading trucks, but cannot state with any degree of certainty whether Caucasian company store workers were exempted from these tasks, and other testimony indicates they were not.[14])  All of that said, plaintiff's main gripe with Bevis is her alleged role in the termination of plaintiff's employment with Kelly Services.[15]

Plaintiff was discharged on January 14, 2004, by Sandra Treadway, Kelly Services's on-site supervisor at defendant's company store.[16]  The discharge resulted from Bevis's investigation into the disappearance of fifteen cases of pork chops from the company store.[17]  Bevis viewed a surveillance video and observed several customers walking out of the store without paying for items, including pork chops, as plaintiff looked on.[18]  Treadway was consulted, and eventually plaintiff was asked

---

[13] Doc. no. 19, Statement of Undisputed Facts, ¶ 11.

[14] *Id*. at ¶ 12.  *See also*, *e.g.*, Moore Depo., p.152, line 11 - p. 153, line 12; Affidavit of Connie Mason-Bevis ("Bevis Aff."), ¶ 5.

[15] Moore Depo., p. 118, line 21 - p. 119, line 3.

[16] Doc. no. 19, Statement of Undisputed Facts, ¶¶ 3, 24.

[17] *Id*. at ¶ 16.

[18] *Id*. at ¶¶ 17, 21.

to view the video herself and write a statement explaining what had transpired.[19]  She did so, admitting that she saw the customers leaving the store without paying, and further confessing that a reasonable observer of the video could conclude that she allowed this to occur in violation of work rules.[20]  This was the sole reason for the termination of plaintiff's employment with Kelly Services,[21] and plaintiff concedes that the termination decision was made by Kelly Services, not by defendant or any of defendant's agents or employees.[22]  Nevertheless, plaintiff contends that Bevis "had them [Kelly Services] to terminate me."[23]

## III. DISCUSSION OF LAW

### A.    Prefatory Matters

Plaintiff does not state, in her complaint or elsewhere, the legal basis for her claims.  In the absence of any statement to the contrary, the court presumes she intends to pursue relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

Title VII makes it unlawful for a covered employer "to discriminate against any

---

[19] *Id*. at ¶¶ 18-20.

[20] *Id*. at ¶¶ 21-23.

[21] *Id*. at ¶ 24.

[22] *See*, *e.g.*, *id*. at ¶ 24.

[23] Moore Depo., p. 133, line 5.  *See also id*. at p. 118, line 21 - p. 119, line 3; *id*. at p. 143, lines 2-8.

individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's *race*, *color*, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis supplied).[24]   Section 1981 provides, in part, that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).[25]   The term "make and enforce contracts" is defined to include, among other things, "the making, performance, modification, *and termination* of contracts," including employment contracts.  42 U.S.C. § 1981(b) (emphasis supplied).

The broad anti-discrimination principles set forth by these statutes encompass situations in which an employer intentionally discriminates against an individual on

---

[24] The full text of this keystone provision of the Civil Rights Act of 1964, as amended, reads as follows:

It shall be an unlawful employment practice for an employer—
  **(1)**  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
  **(2)**  to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

[25] Subsection (c) makes clear that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."  42 U.S.C. § 1981(c).

the basis of that individual's race, whether by terminating their employment, or by allowing them to be subjected to a racially-hostile working environment.  *See, e.g.*, *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002) (recognizing hostile work environment causes of action under both Title VII and § 1981); *Douglas v. Evans*, 916 F. Supp. 1539, 1552, 1555 (M.D. Ala. 1996) (noting existence of discriminatory discharge cause of action under Title VII and § 1981).

Generally, such claims are brought against the plaintiff's employer. Recognizing this, defendant seizes upon plaintiff's admission that she has sued an entity *other than* her employer, as well as her failure to make any argument that defendant should be regarded as such, and claims entitlement to summary judgment as a result.  Defendant is correct that this admission, coupled with the other evidence in the record, defeats any claim against it insofar as plaintiff's complaint could be read to allege a direct employment relationship with defendant.  *See, e.g.*, *Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1255 (11th Cir. 2004) (discussing the test used to determine whether an employment relationship exists).  But that does not end the court's analysis:  under relevant case law, a plaintiff may bring a Title VII and/or § 1981 claim against an entity with which she had no direct employment relationship, so long as that entity had the ability to impact the terms and conditions of plaintiff's employment with her actual employer.  *See, e.g.*, *Zaklama v. Mt. Sinai Medical*

*Center*, 842 F.2d 291, 294 (11th Cir. 1988) (permitting, under both Title VII and §

1981, a discriminatory discharge claim against a non-employer who submitted

adverse performance evaluations to employer, thereby directly effecting employee's

discharge); *Pardazi v. Cullman Medical Center*, 838 F.2d 1155, 1156 (11th Cir.

1988) (recognizing that a Title VII discrimination claim may lie where "a defendant

has interfered with an individual's employment opportunities with a third party");

*Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1291 n.7 (M.D. Fla. 2006)

(presuming the existence of a § 1981 hostile work environment claim in this same

context); *Hunt v. Department of Corrections*, 119 F. Supp. 2d 996, 1001-02 (W.D.

Mo. 2000) (allowing Title VII hostile work environment claim under similar

circumstances).

Here, plaintiff claims that Connie Mason-Bevis, who worked for defendant,

harassed her during her employment with Kelly Services, and also instigated her

termination by Kelly Services. Given Bevis's status as defendant's employee, and her

position of authority over plaintiff, there is no need for plaintiff to allege a direct

employment relationship in order to bring her Title VII and § 1981 claims against

defendant. Accordingly, the court must search the record more deeply to determine

whether plaintiff's indirect discrimination claims survive summary judgment.

**B.    Plaintiff's Discriminatory Discharge Claim**

Plaintiff clearly articulates a claim for discriminatory discharge in her complaint.[26]  She does not invoke any specific statutory provisions in support of her claim; but, as stated above, the court presumes she intends to seek relief pursuant to both Title VII and § 1981.  The Eleventh Circuit has long recognized that section "1981 . . . [employment discrimination] claims require the same elements of proof as a Title VII action." *Palmer v. District Board of Trustees of St. Petersburg Junior College*, 748 F.2d 595, 596 n.2 (11th Cir. 1984) (citing *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir. 1980)).  *See also Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 949 (11th Cir. 1991) ("Section 1981 requires proof of *intentional* discrimination. . . . The Supreme Court has held that the test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases.") (citations omitted) (emphasis in original).

Of course, actually proving that an employer relied upon race in discharging an employee — or in bringing the alleged grounds for discharge to the employer's attention — is rarely a straightforward undertaking.

> Frequently, acts of discrimination may be hidden or subtle; an employer who intentionally discriminates is unlikely to leave a written record of

---

[26] Doc. no. 11, p. 2 ("[S]he [presumably Connie Mason-Bevis] later found a reason to fire me because of my race.").

his illegal motive, and may not tell anyone about it. . . . Because of these realities, plaintiffs are often obliged to build their cases entirely around circumstantial evidence.  The unique proof problems that accompany discrimination cases are the genesis of the unique solutions that the Supreme Court has devised for those cases in *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973),] and its progeny.

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1537 (11th Cir. 1997).

Thus, where (as here) there is no direct evidence of discrimination, the plaintiff bears the initial burden of establishing a *prima facie* case of an employer's intent to discriminate.  *E.g.*, *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 767 (11th Cir. 2005) (citing *McDonnell Douglas*, 411 U.S. at 802).  "[A] plaintiff discharged for misconduct makes out a prima facie case of discriminatory discharge if she shows that she is a member of a protected class, that she was qualified for the job from which she was fired, and 'that the misconduct for which she was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained.'" *Williams v. Motorola*, *Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002) (bracketed alterations in original) (quoting *Nix v. WLCY Radio / Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984)).  *See also*, *e.g.*, *Cuddeback v. Florida Board of Education*, 381 F.3d 1230, 1235 (11th Cir. 2004).  It appears this formulation of the *prima facie* case is equally applicable here, where a third party is alleged to have directly brought about the discriminatory discharge.  *Cf.*

*Zaklama*, 842 F.2d at 295.

"Establishment of the prima facie case in effect creates a *presumption* that the employer unlawfully discriminated against the employee." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1973) (emphasis supplied). "The effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, non-discriminatory reasons for the challenged employment action." *Combs*, 106 F.3d at 1528 (citing *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254). The employer's burden at the second stage of analysis "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)). "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 254-55 (citation and footnote omitted)). Indeed, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257.

If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *id.*, then the "rebuttable presumption" of discrimination created by the demonstration of a *prima facie* case[27] is refuted, "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10.

In this final step of the analytical process, the burden shifts back to the plaintiff to "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely a pretext for intentional discrimination. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804). *See also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004) ("If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. Quarreling with that reason is not sufficient.") (internal citation omitted). The plaintiff shoulders that burden by demonstrating "such weaknesses, implausibilities, inconsistencies,

---

[27]*See Burdine*, 450 U.S. at 254 n.7 (explaining that, in the *McDonnell Douglas* context, the phrase "*prima facie* case" is used to "denote the establishment of a legally mandatory, rebuttable presumption [of discrimination]").

incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538 (internal quotations and citation omitted).

Plaintiff's case falters at two separate junctures in the *McDonnell Douglas* analysis. First, she admits that a reasonable viewer of the surveillance video could form the belief that she violated a work rule by allowing customers to leave the company store without paying for food, and then fails to produce any evidence (other than unsubstantiated hearsay[28]) that any other worker outside the protected class committed similar offenses but was retained. *See*, *e.g.*, *Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000) ("Abel did not offer any evidence sufficient to show that she was similarly situated to any other employee, and absent some other similarly situated but differently disciplined worker, there can be no disparate treatment."); *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 (11th Cir. 1998)

---

[28] Plaintiff testified that she *heard* that a Caucasian cashier, Janine Davis, allowed a security guard to take merchandise from the company store on credit, without paying for the merchandise at that time. Moore Depo., p. 157, line 6 - p. 158, line 15. When pressed on who she heard this from, however, plaintiff stated, "Just people." *Id.* at p. 158, line 8. Plaintiff did not submit any evidence in opposition to summary judgment, and Connie Mason-Bevis declared under penalty of perjury that she has never been made aware of Janine Davis allowing a guard to leave the company store without paying for merchandise. Bevis Aff., ¶ 16. *Cf. Jones v. Gerwens*, 874 F.2d 1534, 1541-42 (11th Cir. 1989) ("For the purposes of this Title VII action, Sergeant Dietrich's previous tolerance of Unit truck use for personal business would be relevant only if it could be shown that either Runnerstorm or Gerwens *knew* of such practices and did not act to discipline rule violators.") (emphasis supplied). Davis, incidentally, was later terminated for falsifying documents regarding freezer temperatures. *See* Affidavit of Sandra Treadway (Treadway Aff.), ¶ 11.

("If Plaintiff fails to identify similarly situated, nonminority employees who were treated more favorably, her case must fail because the burden is on her to establish her prima facie case."), *modified on other grounds on reh'g*, 151 F.3d 1321 (11th Cir. 1998). *Cf. Williams*, 303 F.3d at 1293 ("Williams is a member of a protected class and was terminated, but she has failed to present any evidence that she was performing satisfactorily or treated any differently from males who were insubordinate and had difficulty getting along with co-workers.").

Second, and relatedly, plaintiff fails to rebut defendant's legitimate, nondiscriminatory reason for recommending, advocating, or providing information that served as the factual basis for the adverse employment action — *i.e.*, that plaintiff allowed customers to leave the store without paying for merchandise. *Cf. Dubberly*, 210 F.3d at 1339 ("Furthermore, even if one grants that a similarly situated employee was treated in a different manner, Abel's admission that she took the money rebuts any prima facie case of discrimination[.]"). Plaintiff does at one point argue that defendant's interpretation of the video was incorrect, but she makes no attempt to dispute the reasonableness of its interpretation, or the veracity of the asserted rationale. *Cf. Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for

discriminatory conduct."). Accordingly, plaintiff's claim for discriminatory discharge fails under both Title VII or § 1981.

## C.     Plaintiff's Hostile Work Environment Claim

Plaintiff also appears to lodge a claim for a racially hostile work environment.[29] As stated *supra*, at least two district courts have speculated that such claims could be viable under Title VII and/or § 1981, even where the harassment was not attributable to the plaintiff's direct employer, but to another employer in a position to impact the terms and conditions of the plaintiff's employment. *See Martinez*, 422 F. Supp. 2d at 1291 n.7; *Hunt*, 119 F. Supp. 2d at 1001-02.

The elements of a racially hostile work environment claim are the same, regardless of whether the claim is viewed through the lens of Title VII or § 1981. *E.g.*, *Lusega v. Albrecht & Albrecht, Inc.*, No. 06-CV-809-JEC, 2007 WL 2226056, at * 2 n.2 (N.D. Ga. July 31, 2007) ("The elements of a hostile work environment claim under § 1981 are the same as the elements of a similar claim under Title VII[.]") (citing *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) ("Both of these statutes have the same requirements of proof and use the same

---

[29] *See* doc. no. 11, p. 2 ("I was subjected to unfavorable work, accused of wrongdoing, . . . [and] she [presumably Connie Mason-Bevis] talked and treated me disrespectfully."). For the record, the court notes that defense counsel have failed to thoroughly analyze this facet of plaintiff's complaint, stating only that the allegations at issue "do not remotely approach a hostile environment." Doc. no. 19, p. 23. While the court agrees with that statement, a more complete argument would certainly have been helpful.

analytical framework.")).  That is, "[i]n order to prove a claim for a racially hostile work environment, a plaintiff must 'demonstrate that the actions of the defendants altered the conditions of the workplace, creating an objectively abusive and hostile atmosphere.'" *Jackson v. Motel 6 Multipurpose*, *Inc.*, 130 F.3d 999, 1008 n.17 (11th Cir. 1997) (quoting *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995)).  *See also*, *e.g.*, *Miller v. Kenworth of Dothan*, *Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (holding that a "hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'") (quoting *Harris v. Forklift Systems*, *Inc.*, 510 U.S. 17, 21 (1993)).

A *prima facie* case of a racially hostile work environment requires proof of five elements:  (1) the plaintiff belongs to a class of persons protected by Title VII and/or § 1981; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment complained of was based upon the plaintiff's race; (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of plaintiff's employment and created a discriminatorily abusive working environment; and (5) the defendant is responsible under a theory of either direct or vicarious liability.  *See*, *e.g.*, *Miller*, 277 F.3d at 1275.  *Cf. Williams*, 303 F.3d at 1292-93.

-19-

Here, plaintiff clearly does belong to a protected class — she is African American — and the court has little doubt that she did not welcome any alleged harassment, but she has failed to establish the third and fourth elements of the hostile work environment cause of action.

For starters, the court is not convinced that any of the alleged harassment was severe.  Plaintiff does not, for instance, claim that she was physically abused or threatened; there is no evidence that any mistreatment interfered with her ability to perform the duties of her job; and plaintiff makes no mention of being humiliated or otherwise hurt by Bevis's treatment of her.  *Cf. Harris*, 510 U.S. at 23; *Miller*, 277 F.2d at 1276. Moreover, none of the alleged harassment was clearly traceable to plaintiff's race.  Plaintiff alleges no openly discriminatory comments, no racial epithets, and no veiled racial remarks.  Instead, she complains that she was denied food while on the job, was not allowed to shop during work, was forced to perform unfavorable work such, as restocking freezers and unloading trucks, and so on and so forth.  Not only does plaintiff utterly fail to connect this treatment to her race, this is not even what one would traditionally classify as "harassment."  *Cf. Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002) ("Rojas argues that she was 'treated coolly and made to feel unwelcome' and that Curtis Harris got away with some workplace infractions which were different from her infractions.  The evidence

presented by Rojas does not show enough to create a genuine issue of material fact on whether the *Harris* standard [for hostile work environment claims] is satisfied."); *Doe v. DeKalb County School District*, 145 F.3d 1441, 1449 (11th Cir. 1998) (emphasizing that not "every trivial personnel action that an irritable chip-on-the-shoulder employee did not like [should] form the basis of a discrimination suit"). *See also Cox v. Rumsfeld*, 369 F. Supp. 2d 748, 758-59 (E.D. Va. 2005) (recognizing that "personality conflicts and unfair treatment arise routinely in employment relationships and do not alone constitute a discriminatory hostile working environment") (internal quotations and citation omitted).

Accordingly, plaintiff has failed to establish a *prima facie* hostile working environment claim.

## IV. CONCLUSION AND ORDER

For all of the foregoing reasons, defendant's motion for summary judgment is GRANTED.  Plaintiff's complaint is DISMISSED with prejudice.  Costs are taxed to plaintiff.  The Clerk is directed to close this file.

DONE and ORDERED this 31st day of October, 2007.

United States District Judge